HOTZE, KUNTZLER & Co., APPELLANT, *v.* ERSKINE ET AL., APPELLEES.

18

(No. 7765—Decided February 8, 1954.)

*Mr. John R. Gehrig* and *Mr. R. Edward Tepe,* for appellant.

*Messrs. Kunkel & Kunkel* and *Mr. John H. Heilker,* for appellees George J. Hare and Raymond F. Hare.

*Mr. E. R. Heisel* and *Mr. Chauncey Pichel,* for appellee James Erskine.

Ross, J. After the plaintiff, appellant herein, had effected an appeal on questions of law and fact, he filed an amended petition in this court, to which the defendants filed demurrers on the

ground that such amended petition did not contain facts constituting a cause of action.

The causes of action sought to be stated in such amended petition were for specific performance of a verbal contract to sell real estate, and, conditionally, for reformation of a memorandum of such alleged verbal contract.

Disposing of the latter cause of action first: It seems obvious that there can be no reformation or change of the terms of a memorandum, for if the parties who signed such memorandum failed to write into it what they intended, then the court can not do so. Section 1335.05, Revised Code, prohibits an action upon a contract to convey real estate, unless the same or "some memorandum or note thereof, is in writing and signed by the party to be charged therewith."

Under the statute it is not what the parties intended to do; it is what they did.

The demurrers, through the inherent admission of facts alleged in the amended petition, cannot be employed to create a writing, in whole or in part, which was not executed by the parties. So there can be no reformation of the memorandum. It must stand or fall as it exists. If it fails to meet the requirements of the statute, a court can not alter or add to it. 45 American Jurisprudence, 593, "Reformation of Instruments," Section 19.

As to the first cause of action for specific performance of a verbal contract to sell the real estate, the demurrer, of course, admits not only the well-pleaded allegations of the amended petition, but also the fair, reasonable, and favorable intendments and inferences arising therefrom. *Guardian Life Ins. Co. of America* v. *Veser,* 128 Ohio St., 200, 190 N. E., 405; *Parletto* v. *Industrial Commission,* 140 Ohio St., 12, 42 N. E. (2d), 153; *Gugle* v. *Loeser,* 143 Ohio St., 362, 55 N. E. (2d), 580.

The amended petition contains allegations of the several specific conditions, provisions, and stipulations of a valid contract to sell and purchase a definitely described parcel of real estate. Such allegations are sufficiently complete to warrant a decree of specific performance, with one possible exception, which will be discussed later. It is this oral contract which is sought to be enforced, not the memorandum thereof,

which is merely the evidence of the verbal agreement entered into before the memorandum was signed and executed.

The sole problem here presented then is whether there is sufficient compliance with the statute; that is, whether there is a note or memorandum evidencing the necessary terms of the verbal contract. This compliance, as stated, is not admitted by the demurrer. It has been held generally that such memorandum must contain, as a minimum requirement, statements showing who are the parties to the verbal contract, what real estate was to be conveyed, and the terms of payment.

In 37 Corpus Juris Secundum, 666, "Frauds, Statute of," Section 181, it is stated:

"To be sufficient as a memorandum under the statute, a writing must be complete in itself, leaving nothing to rest in parole. It must contain all the essential elements or material parts of the contract evidenced by it."

A copy of the memorandum relied upon by plaintiff to show compliance with the requirements of Section 1335.05, Revised Code, is attached to the amended petition as an exhibit and is in the following terms:

"Memorandum of Sales Contract—Erskine Property.

"The price of the Erskine property is $85,000 to be paid as follows:

"$1,000 to be paid when this memorandum is approved by both the seller and the buyer, with the understanding that complete contract will be drawn up acceptable to all concerned, at which time the balance of $14,000 will be paid constituting the first payment on this property.

"It is understood that the subdivision will be called Erskine Subdivision.

"The sale of the property will be made on a land sales contract and lots will be released and deeded free and unencumbered and the buyer will pay at the rate of $35 per front foot, and the property released must be paid for at the rate of $14,000 per fiscal year and interest will be paid on the balance of the purchase price at the rate of 3% per year, and this to be paid semi-annually. The seller will pay all taxes and assessments that are payable in June 1951, and the buyer to pay them thereafter.

"The seller will have the privilege to live in the present residence with an acre of ground as long as he lives or chooses to remain on this property. This privilege is not transferable.

"It is understood that the seller may farm any or all of this tract of land without paying rent, with the full understanding that it can be taken over by the buyer whenever he may require it for development purposes.

"If there should be any restrictions on account of declared war or otherwise by the government and the buyer cannot build houses to cost more than $24,000, the annual payments will be reduced 50%, which automatically will extend the final payments.

"Date   June 5 51            (Sgd.)   James Erskine
                                      "Hotze, Kuntzler & Co.
                                      "(Sgd.)   A. J. Hotze, Treas.

"Witness
"(Sgd.) E. W. Townsley."

We have before us the *per curiam* opinion in the case of *Sanders* v. *McNutt,* 147 Ohio St., 408, 72 N. E. (2d), 72. In a *per curiam* opinion, the law pronounced by the court is found in the opinion, there being no syllabus. We note that the decision was by a divided court, and that the dissenting opinion is in conformity with the general law. In the majority opinion, to which judicial subordination requires our acquiescence, certain definite principles applicable to the instant problem are announced. The memorandum as evidence of the verbal contract involved in *Sanders* v. *McNutt, supra,* is set out on page 409, and is as follows:

"3/5/45

"Received deposit of $300 on property located at 4228 New Portage road as binder on sale totalling $12,500, balance to be paid at time of transfer of clear title.

"(signed)   J. R. McNutt."

The terms of such memorandum are, in our opinion, much more meager than in the one involved in the instant case. In the majority opinion in the *Sanders case*, it is stated, on page 410:

"There can be no dispute upon the proposition that the memorandum must contain a description of the property. How-

ever, we are not prepared to hold that the property must be described with the particularity used in a deed or a formal contract. To so hold would render nugatory the provision of the statute that 'unless the agreement upon which such action is brought, *or some memorandum or note thereof*, is in writing, and signed by the party to be charged therewith.'

"Keeping in mind that the instant case has not been tried and that we are now called upon to determine only the sufficiency of the amended petition as against a general demurrer, our consideration is not limited to the memorandum alone but to all the averments of such petition."

It will be noted that authority is thus given to employ the admitted allegations found in the text of the amended petition to identify the description of the property used in the memorandum.

In the instant case the property in the amended petition is described by metes and bounds and alleged to be that "known as the Erskine property." So that under the ruling in *Sanders* v. *McNutt, supra*, the designation in the memorandum of "the Erskine property" would be sufficient. On page 412, it is stated:

"In view of the facts and circumstances (alleged and admitted by the demurrer to be true) preceding the making of the paper writing and the signing thereof by defendant, we conclude that the terms of the contract to sell are reasonably set forth; that the property is sufficiently identified as against a general demurrer; and that under the averments of the amended petition evidence may be adduced to prove that it was the plaintiffs and the defendant who entered into the agreement for the purchase and sale of the property involved."

If the court so concluded as to the memorandum there considered, we think we are bound to extend to the memorandum now considered by this court equal latitude of construction in favor of qualifying such memorandum within the requirements of the statute.

There are two matters involved in the memorandum here considered which require some comment. It will be noticed that the memorandum makes provision for "a complete contract" to be "drawn up acceptable to all concerned."

In the amended petition it is alleged "$14,000 [to be paid]

upon the signing by said parties of a paper writing to be prepared, or caused to be prepared by said agent, containing the terms and conditions of said oral agreement in technical language, in form acceptable to both parties." It is apparent, therefore, that the later draft of the contract "in technical language" was to embody the terms of the oral agreement "concluded and entered into," and that it was the mere form and not the substance of the contract which was to be "acceptable to both parties." 12 American Jurisprudence, 522, "Contracts," Section 25.

The allegations of the amended petition are clearly to the effect that a verbal contract, now sought to be specifically enforced, was "concluded and entered into," and that the written memorandum and the contract in technical language were to be merely evidence of such oral agreement.

It is alleged in the amended petition that the contract was drawn up in technical form and presented to the seller, who failed to sign it as agreed. No valid reason for refusal to sign appears in the allegations of the amended petition.

The memorandum also mentions an option in the seller to choose an acre of ground for his personal use in connection with his occupation of the residence or the real estate involved.

The defendants claim such acre must be specifically described, in order to permit a decree. We think not. If the seller did not exercise such option within a time specified in the decree, he could be foreclosed from that privilege, or the right of determination could be extended to the purchaser. 81 Corpus Juris Secundum, 525, "Specific Performance," Section 46.

As noted in *Sanders* v. *McNutt, supra,* consideration of the case is limited to action on a demurrer to the amended petition. A court of equity will take into consideration the finality of a decision adverse to the plaintiff upon the demurrer as compared with the privilege of answer and trial accorded the defendant upon action favorable to the plaintiff on the demurrer.

The demurrer will be overruled and the defendants given 15 days to plead further.

*Demurrer overruled.*

Ross and Hildebrant, JJ., concur.
Matthews, P. J., concurs in result of opinion.

(Decided December 6, 1954.)

ON THE MERITS.

HILDEBRANT, J. This appeal on questions of law and fact is now presented to this court upon the evidence and exhibits offered at the trial, together with certain depositions.

The ultimate relief prayed for in the second amended petition filed in this court is for specific performance of an alleged oral agreement for the sale of real estate, and, if necessary, reformation of the memorandum in writing upon which the plaintiff relies to take the case out of the statute of frauds.

The memorandum relied upon is in the words and figures following:

"Memorandum of Sales Contract—Erskine Property

"The price of the Erskine property is $85,000 to be paid as follows:

"$1,000 to be paid when this memorandum is approved by both the seller and the buyer, with the understanding that complete contract will be drawn up acceptable to all concerned, at which time the balance of $14,000 will be paid constituting the first payment on this property.

"It is understood that the subdivision will be called Erskine Subdivision.

"The sale of the property will be made on a land sales contract and lots will be released and deeded free and unencumbered and the buyer will pay at the rate of $35 per front foot, and the property released must be paid for at the rate of $14,000 per fiscal year and interest will be paid on the balance of the purchase price at the rate of 3% per year, and this to be paid semi-annually. The seller will pay all taxes and assessments that are payable in June 1951, and the buyer to pay them thereafter.

"The seller will have the privilege to live in the present residence with an acre of ground as long as he lives or chooses to remain on this property. This privilege is not transferable.

"It is understood that the seller may farm any or all of this tract of land without paying rent, with the full understanding that it can be taken over by the buyer whenever he may require it for development purposes.

"If there should be any restrictions on account of declared war or otherwise by the government and the buyer cannot build houses to cost more than $24,000, the annual payments will be reduced 50%, which automatically will extend the final payments.

"Date   June 5 51   .   (Sgd.) James Erskine
"Hotze, Kuntzler & Co.
"(Sgd.) A. J. Hotze, Treas."

With reference to the ancillary prayer for reformation of the memorandum, the court adheres to its former conclusion upon the reasoning and authority expressed through Ross, J., in its opinion on demurrer to the amended petition herein, that no reformation of the memorandum here may be had.

The applicable portion of the statute of frauds, Section 1335.05, Revised Code, provides: "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *."

It is fundamental that the minds of the parties must have met in a completed oral agreement before any memorandum thereof could be effective against the statute of frauds. It is therefore essential that the memorandum show such agreement with reasonable completeness, definiteness, and certainty as to the subject matter and essential provisions of the alleged contract. If it fails to describe the subject matter sufficiently or shows that there are essential provisions yet to be agreed upon, it is too indefinite and uncertain to be specifically performed.

On its face, the memorandum here fails to show completeness of assent to an existing oral agreement, but rather negatives assent by providing that a complete contract would be drawn acceptable to all concerned, and that the sale will be (in the future) made on a land sales contract.

That all of the essential provisions of the land sales contract were not agreed upon is clearly shown in the record by plaintiff's own evidence, by plaintiff and defendant Erskine going on the land after signing the memorandum and discussing alternative plans of a sale of only a portion of the premises

with the remainder to be acquired after the death of Erskine. Nor was any agreement on the location of the one acre to be withheld ever completed.

It is stated in 12 American Jurisprudence, 519, Section 23:

"A contract is not made so long as, in the contemplation of both parties thereto, something remains to be done to establish contract relations. The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete. A binding contract is not made by a memorandum which shows upon its face that the minds of the parties have not met and that it does not express a completed agreement, but states terms which, if accepted, would be the foundation of further treaty between the parties with reference to essential particulars which, when agreed upon, would form part of a contract."

We construe this memorandum rather as an agreement to reach an agreement which imposed no obligation on the parties thereto. *Rosenfield* v. *United States Trust Co.*, 290 Mass., 210, 195 N. E., 323, 122 A. L. R., 1210.

It appears also upon its face that no sufficient description or location of the land is contained in the memorandum. In 19 Ohio Jurisprudence, 605, Section 78, the text is:

"The memorandum must contain a description of the subject matter; an omission thereof is a fatal defect. If an insufficient description is given or there is no description, oral evidence is not admissible in aid of the memorandum, because the court will never receive such evidence both to describe the land, and then to apply the description."

Upon Ohio authority in support of the foregoing conclusions found in *Kling, Admr.*, v. *Bordner*, 65 Ohio St., 86, 61 N. E., 148; *Schmidt* v. *Weston*, 150 Ohio St., 293, 82 N. E. (2d), 284; and *Sherman, a Minor*, v. *Johnson*, 159 Ohio St., 209, 112 N. E. (2d), 326, the relief prayed for must be and it is denied.

In view of the foregoing, the court finds it unnecessary to consider other contentions made in the case.

A decree similar to that entered in the Court of Common Pleas may be presented.

*Judgment accordingly.*

Matthews, P. J., and Ross, J., concur.